[Cite as *State v. Terry*, 2023-Ohio-2074.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220379 |
|  |  | TRIAL NO. C-22CRB-11475 |
| Plaintiff-Appellee, | : |  |
| vs. | | |
| | : | |
| DONNELL TERRY, | | *O P I N I O N.* |
| | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 23, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Defendant-appellant Donnell Terry challenges his conviction for aggravated menacing, arguing that the evidence at his trial proved that he pointed a gun at his daughter's stepgrandfather in self-defense. We disagree and affirm the trial court's judgment.

## I. Facts and Procedure

**{¶2}** Following a dispute with Derrick Jackson on Jackson's porch, Terry pointed a handgun at Jackson. Jackson is the stepgrandfather of Terry's daughter. The state charged Terry with aggravated menacing in violation of R.C. 2903.21, a first-degree misdemeanor. Terry claimed that he was acting in self-defense.

**{¶3}** At the bench trial, the state's case consisted of testimony from Jackson and Officer Patrick Meyer. According to Jackson, Terry knew he was barred from visiting Jackson's house. Jackson recalled that on the morning of the incident, Terry visited Jackson's house and was "banging on [the] door [and] continuously ringing the doorbell." Terry left but returned to Jackson's house later in the day. Terry was on the porch when Jackson opened the door and "told [Terry] to back up and he needed to leave my property." According to Jackson, Terry replied, "make me," before he took one step back and pointed a handgun at Jackson. Jackson recalled fearing that Terry would shoot him. As Terry continued to yell, Jackson closed the door and his wife called the police.

**{¶4}** Officer Meyer responded to the call and spoke with Jackson before signing warrants for Terry's arrest. Terry eventually turned himself in and admitted going to Jackson's house. Officer Meyer testified that Terry had explained to him that Jackson was preventing Terry from seeing his daughter and "they got in[to] an altercation and he just ended up pointing the gun on him."

**{¶5}** Terry testified in his defense and presented a different version of events. Terry recalled having a friend drive him to Jackson's house to see Terry's daughter. According to Terry, he was speaking with his girlfriend, who is Jackson's stepdaughter, before she went into Jackson's house. Terry "knocked on the door to try to get her to come back outside" when Jackson appeared at the door. Terry testified that he was on the phone with his friend when Jackson appeared and overheard Terry tell his friend to "pull up," which Terry believed Jackson misconstrued as a threat. At this point, Jackson "got in [Terry's] face" and the two started arguing. According to Terry, he recently had surgery to remove a metal rod from his leg. This fact was significant because Terry testified that Jackson pushed Terry off the porch. Terry feared for his life and aimed his gun at Jackson.

**{¶6}** The trial court found Terry guilty of aggravated menacing and that Terry "was not acting in self-defense" and the "[u]se of a deadly weapon was – there's no evidence to support that theory." Specifically, the trial court found that Terry's "own statement to police" undercut his alleged fear for his life. The court found that, while Jackson pushed Terry off Jackson's porch, there was "no evidence, whatsoever, to support the contention that defendant reasonably feared for his life." Further, the court found Terry at fault for creating the situation because he was on Jackson's property, "was told to leave, and refused to do so."

**{¶7}** The court sentenced Terry to a 180-day term of incarceration and credited him with one day served. Terry appeals his conviction and raises a single assignment of error.

3

## II. Law and Analysis

**{¶8}** Terry maintains that the manifest weight of the evidence at trial proved that he used deadly force in self-defense.[1] The parties agree that a manifest-weight argument tests the greater amount of credible evidence offered at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight challenge, we " 'consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶9}** To succeed on a self-defense claim involving the use of deadly force, a defendant must show "(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such a danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 48, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Failing to establish " '*any one* of these elements' " is fatal to a self-defense claim. (Emphasis in original). *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), quoting *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986); *see*

---

[1] The trial court and both parties on appeal analyze Terry's self-defense claim under the test for self-defense in cases involving the use of deadly force. It is clear that shooting a firearm at a person constitutes deadly force. *See State v. Neal,* 1st Dist. Hamilton No. C-210166, 2022-Ohio-1290, ¶ 21; *see also State v. Barker,* 2022-Ohio-3756, 199 N.E.2d 626, ¶ 21 (2d Dist.); *State v. Sarge,* 5th Dist. Knox No. 21CA000014, 2021-Ohio-4379, ¶ 29; *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 22. But it is less clear whether brandishing or pointing a firearm at another person constitutes deadly force. *See* R.C. 2901.01(A)(2). Because the parties have not briefed this issue, we assume for the sake of argument that aiming a firearm at Jackson constituted deadly force.

*Smith* at ¶ 48. In other words, when the evidence at trial tends to support a self-defense claim, the state must disprove at least one element beyond a reasonable doubt. *State v. Gibson,* 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 10, quoting *Smith* at ¶ 49, citing R.C. 2901.05(B)(1). Often, self-defense claims turn on issues of credibility. *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. On appeal, Terry's arguments focus on the fault and fear elements of his self-defense claim.

{¶10} Beginning with the fear element, the evidence must show an honest, subjective belief of imminent danger of great bodily harm, and that the fear was objectively reasonable. *Smith* at ¶ 56, citing *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 29, citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).  This element is both subjective and objective. *Id.* Put differently, "a defendant's belief must be objectively reasonable under the circumstances and that belief must be honestly held by the defendant." *Id.,* citing *Williams* at ¶ 29*,* citing *Thomas* at 331.

{¶11} A subjective belief of imminent danger means that " ' "a defendant must demonstrate that he acted out of fear, or he felt that his life was threatened." ' " *State v. Blair*, 2d Dist. Montgomery No. 28904, 2021-Ohio-3370, ¶ 11, quoting *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.), quoting *State v. Crawford,* 2d Dist. Montgomery No. 22314, 2008-Ohio-4008, ¶ 26.

{¶12} Terry argues that his testimony established that he held a subjective fear of imminent danger of great bodily harm. The trial court found that Terry's statement to police that he pointed the gun at Jackson because "he wanted to see the child and he wasn't allowed to be over there, he got angry about it" undercut his argument that he had a subjective belief of imminent danger.

**{¶13}** Terry testified that he was recovering from leg surgery at the time, and that fact, combined with Jackson's shove, created a subjective fear of bodily harm. Terry recalled that after Jackson's shove, he "flew" and "was unstable" and "felt fear for my life, so I pulled my gun out on him." But we cannot ignore the evidence in the record that undermines the existence of a subjective fear of bodily harm. First, there is conflicting evidence that Jackson even pushed Terry. Jackson testified that Terry stepped back before Terry pointed his gun at Jackson. And Officer Meyer testified that Terry failed to mention that Jackson had pushed him before Terry drew his gun. Second, there is evidence that Terry acted out of anger, not fear. Officer Meyer testified that Terry explained that he pointed a gun at Jackson because "he wanted to see the child and he wasn't allowed to be over there, he got angry about it." In the end, Terry's subjective belief of imminent danger hinges on which accounts are more credible.

**{¶14}** A manifest-weight review requires this court to consider the witnesses' credibility. *Williams,* 9th Dist. Summit No. 29444, 2020-Ohio-3269, at ¶ 32. But the trial court was "in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible." *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 51, quoting *State v. Favor*, 10th Dist. Franklin No. 08AP-215, 2008-Ohio-5371, ¶ 10. Terry's testimony was incongruous with both Jackson's and Meyer's, which undermines his credibility as a witness. Plus, there is evidence that Terry pointed the gun at Jackson out of anger, not fear. It follows that the trial court's determination regarding Terry's subjective fear was not against the manifest weight of the evidence.

**{¶15}** Even if we were to find that Terry held an honest belief of imminent danger, he has not demonstrated that his alleged belief was reasonable under the circumstances. The trial court found that there was no evidence that the only means of escape for Terry was the use of such force. Indeed, the use of deadly force in self-defense must be reasonably proportionate—self-defense " 'is not available unless the defendant shows that the force used to repel the danger was not more than the situation reasonably demanded.' " *State v. Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, ¶ 12. Thus, Terry's use of a gun must have been reasonably necessary to repel Jackson's attack. *State v. Reyes-Figueroa*, 2020-Ohio-4460, 158 N.E.3d 939, ¶ 27 (8th Dist.), quoting *State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 23, citing *Williford*, 49 Ohio St.3d at 249, 551 N.E.2d 1279. When defendant's force " 'is so disproportionate that it shows an "unreasonable purpose to injure," the defense of self-defense is unavailable.' " *State v. Waller*, 4th Dist. Scioto Nos. 15CA3683 and 15CA3684, 2016-Ohio-3077, ¶ 26, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶ 27, quoting *State v. Speakman*, 4th Dist. Pickaway No. 00CA035, 2001 Ohio App. LEXIS 1489 (Mar. 27, 2001). The trial court found that Jackson had told Terry to leave and, if Terry's testimony is believed, shoved him off Jackson's porch. These facts do not give rise to an objectively reasonable fear that great bodily harm was imminent. Instead, it shows that Jackson wanted Terry off his property. It is objectively unreasonable to conclude that being driven off a porch constitutes imminent danger of great bodily harm. Terry's use of a gun was disproportionate to what the situation reasonably demanded and cannot be justified through a claim of self-defense.

**{¶16}** Because the state needs to disprove only one element to refute a claim of self-defense, Terry's fault arguments are moot. *See Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, at ¶ 15. Ultimately, we cannot say that the trial court's rejection of Terry's self-defense claim created a manifest miscarriage of justice requiring a reversal of Terry's conviction. We overrule the single assignment of error.

### III. <u>Conclusion</u>

**{¶17}** We overrule Terry's sole assignment of error and affirm his conviction.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.